IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **LYNNETTE STELLHORN,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil No. 13-cv-1288-CJP[1] |
| | ) |
| **CAROLYN W. COLVIN,** | ) |
| **Acting Commissioner of Social** | ) |
| **Security,** | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM and ORDER

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff Lynnette Stellhorn seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for DIB and SSI in September, 2010, alleging disability beginning on May 5, 2010. (Tr. 13). After holding an evidentiary hearing, ALJ William L. Hafer denied the application in a written decision dated October 19, 2012. (Tr. 13-22). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

---

[1] This matter was referred to the undersigned for final disposition upon consent of the parties, pursuant to 28 U.S.C. §636(c).  See, Doc. 11.

1

**Issue Raised by Plaintiff**

Plaintiff listed two points in the "Table of Contents" portion of her brief. However, she discussed only one point in the body of her brief, i.e., that the ALJ erred in failing to include limitations arising from ulcerative colitis after having found that ulcerative colitis was a severe impairment.

**Applicable Legal Standards**

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes.[2]  For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. §423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.   42 U.S.C. §423(d)(3).   "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit.   20 C.F.R. §§ 404.1572.

With regard to plaintiff's application for DIB, plaintiff must establish that she

---

[2]  The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404.   The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416.   As is relevant to this case, the DIB and SSI statutes are identical.   Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations.   Most citations herein are to the DIB regulations out of convenience.

was disabled as of her date last insured. *Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997). It is not sufficient to show that the impairment was present as of the date last insured; rather plaintiff must show that the impairment was severe enough to be disabling as of the relevant date. *Martinez v. Astrue*, 630 F.3d 693, 699 (7th Cir. 2011).

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work

Case 3:13-cv-01288-CJP   Document 23   Filed 12/15/14   Page 4 of 12   Page ID #637

experience. 20 C.F.R. §§ 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009.

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984). See also *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled…. If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether Ms. Stellhorn was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. See, *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)).

The Supreme Court has defined "substantial evidence" as "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 91 S. Ct. 1420, 1427 (1971). In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

### The Decision of the ALJ

ALJ Hafer followed the five-step analytical framework described above. He determined that plaintiff had not been engaged in substantial gainful activity since the alleged onset date. She was insured for DIB through December 31, 2015. The ALJ found that plaintiff had severe impairments of degenerative disc disease of the lumbar spine with fusion at L5-S1; ulcerative colitis, generally controlled with medication; depression; anxiety; and dependent personality disorder. He further determined that these impairments do not meet or equal a listed impairment.

The ALJ found that plaintiff had the residual functional capacity (RFC) to perform work at the light exertional level, with some physical and mental limitations. None of the limitations assessed were explicitly related to ulcerative colitis. Based on the testimony of a vocational expert, the ALJ found that plaintiff was able to do her past relevant work as a housekeeper.

### The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in

formulating this Memorandum and Order. The following summary of the record is directed to the point raised by plaintiff and is confined to the relevant time period. In view of the limited point raised by plaintiff, the Court will omit an extended discussion of the evidence related to plaintiff's back problems and mental health.

### 1.  Agency Forms

Plaintiff was born in 1961, and was 49 years old on the alleged onset date of May 5, 2010. (Tr. 180). She had worked as a housekeeper in a hospital from 2006 through May, 2010. (Tr. 185).

Plaintiff stated in a Function Report that she had ulcerative colitis for about 12 years. She said she missed a lot of work due to flare-ups. She was run-down and weak. She had 7 to 10 bowel movements a day. (Tr. 171).

### 2.  Evidentiary Hearing

Ms. Stellhorn was represented by a non-attorney advocate at the evidentiary hearing in September, 2012. (Tr. 31). She testified that she had pain in her low back and right leg. She also had pain between her shoulder blades. She had numbness and muscle spasms. (Tr. 38).

Plaintiff had not been able to get treatment for ulcerative colitis in the year or two before the hearing because she did not have insurance. She had been treated for ulcerative colitis treated in the past, and had polyps removed. She had bowel movements 4 or 5 times a day. She also had pain. (Tr. 42-43). Her bowel movements are unpredictable and she must always be near a restroom. In her job as a housekeeper at a hospital, there were usually restrooms fairly close by. (Tr.

53-54).

A vocational expert (VE) testified that plaintiff's past relevant work as a housekeeper was light and unskilled.  The ALJ asked him to assume a person who was able to do work at the light exertional level, limited to only occasional stooping, kneeling, crouching, crawling and climbing stairs.  She should never climb ladders, ropes or scaffolding and should not work around unprotected heights or dangerous machinery.  She was limited to performing simple, repetitive tasks that involve one or two steps, at a slow to moderate pace, with no close coordination or team work with others.  The VE testified that this person could do plaintiff's past work as a housekeeper.  (Tr. 57-58).

### 3.   **Medical Treatment**

Plaintiff was seen by her primary care physician for ulcerative colitis symptoms in 2009 and early 2010.  In June and July, 2010, the doctor noted that she was having less problems with diarrhea.  In September, 2010, she was having some abdominal pain and diarrhea, but, in November, 2010, the doctor noted "not much problem" with her colitis.  She was seen again in December, 2010, and January, 2011, but the notes do not document any symptoms from ulcerative colitis.  (Tr. 365-378).

Ms. Stellhorn began seeing Dr. Ellen McDermott as her primary care physician in February, 2011.  On the first visit, Dr. McDermott noted that she had a history of chronic back pain, depression, anxiety disorder and ulcerative colitis. Ms. Stellhorn told the doctor that she was diagnosed with ulcerative colitis about 13 years earlier, and, while she was working, she would have five to six "flare ups" a

7

year. Since she had stopped working, the flare ups had improved. On exam, her abdomen was soft, nondistended and nontender. Bowel sounds were positive. Dr. McDermott's assessment was that her ulcerative colitis was "largely asymptomatic at this time." She planned to continue to monitor it. (Tr. 512-513).

Dr. McDermott saw plaintiff about once a month for the rest of 2011. On most visits, there was no mention of ulcerative colitis at all. (Tr. 444, 460, 470, 476, 482, 488, 510). In October, 2011, Dr. McDermott noted that plaintiff was unable to see a gastroenterological specialist because she had no insurance. She was having frequent stools, but no bloody discharge or abdominal pain. (Tr. 460).

In January, 2012, Dr. McDermott noted that plaintiff had a history of ulcerative colitis, but there is no mention of any complaints or symptoms related to that condition. (Tr. 441). On the last visit with Dr. McDermott in May, 2012, no symptoms of ulcerative colitis were mentioned in the doctor's notes. (Tr. 536-537).

   4.   **State Agency Consultant RFC Assessment**

Dr. Lenore Gonzalez assessed plaintiff's physical RFC based on a review of the records in December, 2010. Dr. Gonzalez acknowledged that Ms. Stellhorn had ulcerative colitis. Her assessment comports with the ALJ's ultimate findings as to plaintiff's physical RFC, i.e., that she was able to do light work with postural limitations. Dr. Gonzalez also limited her to only occasional pushing with the lower extremities. (Tr. 349-356). The ALJ rejected that limitation because the medical evidence showed that plaintiff's slight foot drop did not impede her

functioning or ability to walk. (Tr. 20).

### 5. Opinion of treating doctor

Dr. McDermott prepared two reports. The first report, dated April 4, 2011, is a two-page form which asked the doctor to evaluate plaintiff's pain. Dr. McDermott wrote that plaintiff "suffers from chronic back pain – has required surgery/lumbar fusion 2010." There is no mention of ulcerative colitis in that report. (Tr. 438-439).

The second report is a letter dated November 2, 2011. Dr. McDermott wrote that plaintiff was under her care for "treatment of several chronic conditions including Major Depressive Disorder . . . Ulcerative Colitis, and Chronic Low Back Pain." She went on to state that "Given the labile nature of her symptoms, her multiple medications required for treatment, and her inability to maintain a regular work schedule and meet the demands required of her in a normal full time work setting, it is of [sic] my opinion that she is not able to be employed at this time." (Tr. 437).

## Analysis

Plaintiff's only point is a narrow one: she argues that, having deemed her ulcerative colitis to be a severe impairment at step two, the ALJ was required to include limitations arising from that impairment in his RFC assessment.

A severe impairment is an impairment or combination of impairments that "significantly limits [one's] physical or mental ability to do basic work activities." 20 C.F.R. §404.1520(c). At step two of the sequential analysis, the ALJ must determine whether the applicant's alleged physical and mental conditions

constitute severe impairments.  At step four, the ALJ must assess the applicant's RFC and determine whether she can still do her past relevant work.  20 C.F.R. §§404.1520(a) & 404.1520a(a).

Plaintiff relies on *Guranovich v. Astrue*, 465 Fed.Appx. 541 (7th Cir. 2012).  That citation is unavailing.  First, that case is a nonprecedential order.  Seventh Circuit Rule 32.1(b) provides:

> The court may dispose of an appeal by an opinion or an order. Opinions, which may be signed or *per curiam*, are released in printed form, are published in the Federal Reporter, and constitute the law of the circuit. Orders, which are unsigned, are released in photocopied form, are not published in the Federal Reporter, and are not treated as precedents.

Thus, *Guranovich* does not constitute the law of the circuit, and is not treated as precedent.  Further, *Guranovich* does not hold that an ALJ errs in failing to assign limitations arising from a condition that he has previously found to be a severe impairment.  The ALJ in that case, as in our case, found that a condition (PTSD) was a severe impairment at step two, but did not assign limitations arising from PTSD in his RFC assessment.  The Seventh Circuit expressly declined to enact the rule for which plaintiff now argues.  "This circuit has not yet decided whether an ALJ's findings at step four must be consistent with those at step two, and we need not decide the issue here, because the ALJ did not end his analysis at step four." *Guranovich,* 465 Fed.Appx. at 543. Plaintiff seeks to distinguish *Guranovich* because the ALJ here ended his analysis at step four.   This is a distinction without a difference.

The real problem with plaintiff's argument is that she does not point to any evidence that establishes that she actually has any work-related limitation arising

10

from ulcerative colitis. She glosses over the fact that the ALJ found that her ulcerative colitis was controlled by medication.[3] She suggests that the ALJ erred in failing to more fully discuss her ulcerative colitis. However, the ALJ was obviously aware that she had that condition. In the absence of any evidence of a limitation arising from that condition, there was nothing more for the ALJ to discuss. At most, the failure to more fully discuss ulcerative colitis was a harmless error.

Plaintiff points out that Dr. McDermott's letter stated that the cumulative effects of plaintiff's conditions, including ulcerative colitis, made her "not able to be employed at this time." This letter did not specify a limitation caused by ulcerative colitis, and therefore does not support plaintiff's argument. Further, the ALJ discussed the opinion and gave it little weight. (Tr. 21). Plaintiff does not argue that the ALJ erred in weighing Dr. McDermott's opinion.

Plaintiff also argues that the opinon of the state agency reviewer, Dr. Gonzalez, does not support the ALJ's RFC determination because Dr. Gonzalez assessed limitations arising only from her back condition. This argument ignores the fact that Dr. Gonzalez specifically noted that Ms. Stellhorn had ulcerative colitis. (Tr. 356). Contrary to plaintiff's argument, the fact that Dr. Gonzalez did not assess any limitations arising from ulcerative colitis supports the ALJ's RFC assessment.

RFC is "the most you can still do despite your limitations." 20 C.F.R.

---

[3] Plaintiff does not argue that the ALJ erred in failing to consider that lack of health insurance limited her ability to access medical treatment. She also does not take issue with the ALJ's credibility determination.

11

§1545(a). In assessing RFC, the ALJ is required to consider all of the claimant's "medically determinable impairments and all relevant evidence in the record." *Ibid.* Obviously, the ALJ cannot be faulted for omitting alleged limitations that are not supported by the record. Here, plaintiff points to nothing in the record to support the suggestion that her ulcerative colitis causes her any work-related limitations. Arguably, the ALJ erred in deeming ulcerative colitis to be a severe impairment at step two. If so, that error was clearly harmless and would not require remand.

## Conclusion

After careful review of the record as a whole, the Court is convinced that ALJ Hafer committed no errors of law, and that his findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying Lynnette Stellhorn's application for disability benefits is **AFFIRMED**.

The Clerk of Court shall enter judgment in favor of defendant.

**IT IS SO ORDERED.**

**DATE:** December 15, 2014.

> **s/ Clifford J. Proud**
> **CLIFFORD J. PROUD**
> **UNITED STATES MAGISTRATE JUDGE**